IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DWAYNE COULTER, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No.: 93 C 732 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| DEIDRE BATTAGLIA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

A state court jury convicted African-American Dwayne Coulter of the first degree murder of a Caucasian police officer and of conspiracy to commit the murder of another man in 1987. He was sentenced to natural life imprisonment. Coulter has contended since trial that the prosecution's racially motivated use of peremptory challenges during jury selection violated his Equal Protection rights, contravening *Batson v. Kentucky*, 476 U.S. 79 (1986). His state and federal appeals have lasted eighteen years, generating no less than fourteen written opinions from five courts, including the United States Supreme Court. On November 23, 2005, this court reinstated Coulter's petition for a writ of *habeas corpus*, originally filed January 28, 1993, for consideration in light of *Miller-El v. Cockrell*, 537 U.S. 322 (2003) ("*Miller-El I*") and *Miller-El v. Dretke*, 545 U.S. ___, 125 S. Ct. 2317 (2005) ("*Miller-El II*"). This court grants Coulter's petition for the second time, for the same reasons the Seventh Circuit remanded the case to the Illinois courts in 1998. *See Coulter v. Gilmore*, 155 F.3d 912 (7th Cir. 1998).

## I. Background

### A. Facts and Procedural History

The following facts are drawn from the Seventh Circuit's opinion in *Coulter v. Gilmore*, 155 F.3d 912. An Illinois jury convicted Coulter of the first degree murder of Michael Ridges, a police officer, and of conspiracy to murder another man. Before jury selection began, the trial judge instructed the parties to explain each peremptory challenge *in camera* because the state was seeking the death penalty. During jury selection, the state used ten of its fourteen peremptory challenges, excusing nine African-Americans from the panel. The jury ultimately consisted of three African-Americans, one Hispanic, and eight Caucasians, with two African-American alternates. Coulter's attorney moved for a mistrial on three separate occasions, contending the state's pattern of peremptory challenges violated the Equal Protection Clause under *Batson*.

On appeal, Coulter renewed his *Batson* challenge to jury selection. While retaining jurisdiction, the Illinois appellate court remanded the case because the serial *in camera* justifications of peremptory strikes required by the trial judge did not satisfy *Batson*. *See People v. Coulter*, 594 N.E.2d 1163, 1171 (1st Dist. 1992) ("*Coulter I*"). On remand, the trial judge solicited briefs on the issue and heard arguments on three separate occasions ("1991 *Batson* hearing"). The trial court denied relief. The appellate court affirmed, though it found that the procedure followed by the trial court was "less than ideal." *Id.* at 1176. According to the appellate court, Coulter made a *prima facie* showing of discriminatory intent, but the trial court's conclusion that the state's explanations were reasonable – and not pretextual – was not clearly erroneous. In reaching this conclusion, the appellate court engaged in a serial, juror-by-juror

2

analysis. Coulter unsuccessfully sought leave to appeal from the Supreme Court of Illinois. *People v. Coulter*, 602 N.E.2d 461 (Ill. 1992).

Coulter filed a *pro se* petition for a writ of *habeas corpus* on January 28, 1993. Initially, this court held that Coulter procedurally defaulted. Dkt. # 22. The Seventh Circuit reversed and remanded the case for consideration of the substantive *Batson* claim. *Coulter v. Gramley*, 93 F.3d 394 (7th Cir. 1996). On remand, this court found Coulter was entitled to *habeas* relief unless the state granted him a new trial within 120 days. *Coulter v. Gramley*, 945 F. Supp. 1138 (N.D. Ill. 1996). The Seventh Circuit affirmed, but stayed the writ pending another state *Batson* hearing rather than a new trial. *Coulter v. Gilmore*, 155 F.3d at 922. In the Seventh Circuit's view, the Illinois trial court and the Illinois appellate court violated *Batson* because neither court performed an analysis of the prosecution's peremptory strikes in light of the totality of the circumstances, including consideration of the strikes against African-Americans who were similarly situated to unchallenged nonminority jurors. *Id.*

The remaining facts are drawn from the Illinois appellate court's opinions in this case. On remand from the Seventh Circuit, the state trial court conducted another *Batson* hearing ("1998 *Batson* hearing"). The trial court stated that it considered the totality of the circumstances in adopting the conclusions of the 1991 *Batson* hearing. The original prosecutors were not present and the presiding judge was new to the case. The court took no new evidence, but evaluated the parties' arguments in light of the evidence adduced at the 1991 hearing. *See People v. Coulter*, 748 N.E.2d 240 (1st Dist. 2001) ("*Coulter II*"). The Illinois appellate court affirmed. Coulter unsuccessfully argued that the trial court was not only required to consider the totality of the circumstances, but to engage in an analysis of similarly situated jurors as directed

3

by the Seventh Circuit. Coulter unsuccessfully sought leave to appeal to the Supreme Court of Illinois. *People v. Coulter*, 763 N.E.2d 321 (Ill. 2001). Coulter's petition for *certiorari* to the United States Supreme Court was granted.[1] The Supreme Court vacated *Coulter II* and remanded the case for reconsideration in light of *Miller-El I*. *Coulter v. Illinois*, 537 U.S. 1230 (2003).

On remand, the Illinois appellate court rejected the application of *Miller-El I* to *Coulter II* and reaffirmed the 1998 *Batson* hearing. *People v. Coulter*, 799 N.E.2d 708 (1st Dist. 2003) ("*Coulter III*"). Coulter unsuccessfully sought additional review by the Supreme Court of Illinois, *People v. Coulter*, 807 N.E.2d 977 (Ill. 2004), and by the United States Supreme Court. *Coulter v. Illinois*, 125 S. Ct. 2928 (2005), *reh'g denied*, 126 S. Ct. 28 (Aug. 22, 2005). While Coulter's second writ of *certiorari* was pending, the Supreme Court decided *Miller-El II*.

Coulter then moved to reinstate his petition for a writ of *habeas corpus* on November 18, 2005. This court granted the motion on November 23, 2005. Dkt. # 82.

---

[1]Coulter sought leave to file a second petition for a writ of *habeas corpus* with the Seventh Circuit while his petition for *certiorari* was pending. The Seventh Circuit allowed the petition, but found it was a continuation of the earlier petition and ordered the matter transferred to this court. Dkt. # 58. Before the merits of the petition were reached, the Supreme Court vacated the Illinois appellate court opinion affirming the 1998 *Batson* hearing, rendering the petition moot. Dkt. # 76.

Coulter also pursued state post-conviction relief while *certiorari* was pending. He alleged he was denied effective assistance of counsel at the 1998 hearing. The Illinois trial court summarily dismissed the petition, but the Illinois appellate court reversed. *People v. Coulter*, 803 N.E.2d 932 (1st Dist. 2004). The state appealed and the Supreme Court of Illinois reversed and remanded. *People v. Coulter*, 806 N.E.2d 1005 (Ill. 2004). The appellate court affirmed the summary dismissal. *People v. Coulter*, 815 N.E.2d 565 (1st Dist. 2005). The Supreme Court of Illinois denied Coulter's petition for leave to appeal. *People v. Coulter*, 829 N.E.2d 790 (Ill. 2005).

## B. *Miller-El I and Miller-El II*

The Supreme Court's decisions in *Miller-El I* and *II* are the impetus for Coulter's reinstated petition. Both opinions concern a petition for *habeas corpus* that alleged a *Batson* violation. In *Miller-El I* and *II*, the petitioner shot and killed a Holiday Inn clerk in the course of a robbery. *Miller-El I*, 537 U.S. at 327-28. During jury selection, the petitioner moved to strike the jury panel under *Swain v. Alabama*, 380 U.S. 202 (1965), *Batson's* predecessor. *Miller-El I*, 537 U.S. at 328. The trial court denied his motion. A jury found him guilty of capital murder and the trial court sentenced him to death. The petitioner appealed his conviction. While the appeal was pending, the Supreme Court decided *Batson*; the Texas appellate court remanded the case for consideration under *Batson*. At the *Batson* hearing, the petitioner presented extensive evidence that the prosecution engaged in conduct intended to systematically exclude African-Americans from the jury. *Id.* The evidence included disparate questioning of African-American members of the venire, strikes against African-American members of the venire for reasons equally applicable to Caucasian members of the venire, and a former prosecution policy excluding all minorities from juries. *Id.* at 331-32, 334. The trial court found the petitioner failed to satisfy step one of *Batson* and denied relief. *Id.* at 329. The petitioner's direct appeal was unsuccessful, as were his federal and state *habeas* proceedings. *Id.* at 329-30. After the federal district court denied *habeas* relief, he sought a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253. *Miller-El I*, 537 U.S. at 330. The district court denied the COA application, and the Fifth Circuit agreed.

*Miller-El I* primarily concerned the standard for issuing a COA. *Id.* at 331. The Court had to determine whether the district court's decision was "debatable." *Id.* at 348. This

"require[d] a preliminary, though not definitive, consideration of the three-step framework mandated by *Batson*." *Id.* at 338. Only the third stage of *Batson* was at issue. In step three, "the critical question in determining whether a prisoner has proven purposeful discrimination . . . is the persuasiveness of the prosecutor's justification for his peremptory strike." *Id.* at 338-39. Several issues indicated the district court's conclusion that no purposeful discrimination occurred was debatable. One was that "three of the State's proffered race-neutral rationales for striking African-American jurors pertained just as well to some white jurors who were not challenged and who did serve on the jury." *Id.* at 343. The Court left open whether a comparative analysis of those jurors would conclusively indicate pretext.

*Miller-El II* confirmed the significance of a similarly situated juror analysis. After remand, the Fifth Circuit granted the COA as *Miller-El I* required, but rejected the petitioner's *Batson* claim on the merits. The Supreme Court granted *certiorari* and engaged in the definitive *Batson* analysis reserved in *Miller-El I*. The Court held, "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." *Miller-El II*, 125 S. Ct. at 2325; *see also Sims v. Brown*, 425 F.3d 560, 575 (9th Cir. 2005); *United States v. Minter*, No. 04-4628, 2005 WL 2172040, at *2 (4th Cir. Sept. 8, 2005) (unpublished); *Murphy v. Dretke*, 416 F.3d 427, 439 (5th Cir. 2005).

## II. Coulter's Reinstated *Habeas Corpus* Petition

### A. Legal Standard

When the state's use of peremptory challenges is attacked, a reviewing court engages in a three part analysis under *Batson*. First, the petitioner must establish a *prima facie* case of

6

purposeful discrimination. *Coulter v. Gilmore*, 155 F.3d at 917. The petitioner must demonstrate: (1) he is part of a cognizable racial group; (2) the state used its peremptory challenges to eliminate members of petitioner's racial group from the venire; and (3) that sufficient facts and circumstances warrant an inference the state exercised its peremptories on the basis of race. *Id.* If the petitioner succeeds, the state must offer legitimate race-neutral justifications for the strikes. *Id.* Finally, the court must determine if petitioner has proven purposeful discrimination, given the state's explanations. *Id.*

This framework must be applied within the context of a *habeas* petition brought under 28 U.S.C. § 2254. Because Coulter filed his petition in 1993, this case is governed by the standards applied before enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Coulter v. Gilmore*, 155 F.3d at 917. Under pre-AEDPA standards, factual determinations made by state courts are entitled to a presumption of correctness if they are supported by the record as a whole. A finding of purposeful discrimination in the use of peremptories is a factual matter afforded a presumption of correctness. *Id.* Coulter may rebut this presumption with convincing evidence. An error of law constituting an abuse of discretion warrants reversal. *Id.*

### B. Analysis

The core of Coulter's amended petition is the same as it was in 1993, when he was originally before this court. The amended petition asserts that the Illinois courts failed to engage in a proper third stage *Batson* analysis.

The initial error in this case occurred when the Illinois appellate court affirmed the 1991 *Batson* hearing even though the procedure followed by the trial court was "less than ideal."

7

*Coulter I*, 594 N.E.2d at 1176. In overturning the Illinois appellate court's conclusion that the 1991 *Batson* hearing was valid, the Seventh Circuit found the "trial judge squandered the opportunity the appellate court had given him to engage in a more careful, structured *Batson* analysis." *Coulter v. Gilmore*, 155 F.3d at 918. Instead, the trial judge "looked only in an isolated way at individual jurors and individual reasons, and even in that setting he overlooked remarkable similarities between the excluded African-Americans and the non-excluded Caucasians." *Id.* at 920. This procedure was fatal because "the crucial and determinative inquiry in a *Batson* claim is whether the state has treated similarly situated venirepersons differently based on race." *Id.* at 921. The Seventh Circuit found two potentially improper strikes when comparing similar jurors. Melanie Pinkins, an African-American, was excused by the state because her mother was a nurse. The state did not challenge Caucasian Larry Saverslack although his wife was a registered nurse. The state excused African-American Marcina Adams because she was a licensed practical nurse who might know too much about mental health. But, the state did not strike Bertha Fangman, a Caucasian, whose father was treated for depression. *Id.* The Seventh Circuit concluded its *Batson* analysis with a specific admonition:

> [S]omehow, at some point, the trial court must evaluate the broader pattern of strikes, so that it can detect situations like those presented by Pinkins and Adams, where prospective jurors arguably are being treated dissimilarly from their non-minority counterparts. We therefore hold that the state trial court violated *Batson* by adhering to a procedure that precluded it – both as a systematic matter and in fact – from performing a "similarly situated" analysis based on the "totality of the circumstances."

*Id.*

Despite this admonition, the 1998 *Batson* hearing, held after the Seventh Circuit discredited *Coulter I*, engaged in the same insufficient analysis. Rather than supplementing the

record with new evidence and properly engaging in the three step *Batson* analysis, the state trial court examined the "totality of the circumstances" before the court at the 1991 *Batson* hearing. By relying on a record that the Seventh Circuit had determined was flawed, the 1998 *Batson* hearing was also flawed.

The Illinois appellate court initially reviewing the 1998 *Batson* hearing recognized that the trial court did not address the problems identified by the Seventh Circuit. Instead, the Illinois appellate court refused to require a similarly situated juror analysis. *Coulter II*, 748 N.E.2d at 250. In addressing the Seventh Circuit's concern regarding Adams and Fangman, the Illinois appellate court wrote, "although the Seventh Circuit in *Coulter v. Gilmore* pointed out white venire members that it claimed were similarly situated to Adams, the trial court on remand was not bound to abide by that court's views in engaging in its 'totality of the circumstances' analysis." *Id.*

After the United States Supreme Court vacated *Coulter II*, the Illinois appellate court repeated the *Coulter II* court's mistake in *Coulter III*. Instead of engaging in a similarly situated juror analysis, which assisted the Supreme Court in its preliminary analysis of the *Batson* claim in *Miller-El I*, the Illinois appellate court held that *Miller-El I* was inapplicable. *Coulter III*, 799 N.E.2d at 712. The Illinois appellate court did not address the Seventh Circuit's concern regarding Adams, but it again affirmed the 1998 *Batson* hearing. However, in relying entirely on the vacated opinions in *Coulter I* and *II*, the error found by the Seventh Circuit was only perpetuated and compounded.

Because Illinois courts have failed to comply with the Seventh Circuit's mandate in *Coulter v. Gilmore* by not conducting a similarly situated juror analysis, the result must be the

9

same as the one reached by the Seventh Circuit – a result solidified by the intervening precedent in *Miller-El I* and *II.* Furthermore, the Illinois courts have failed to address the Seventh Circuit's concern regarding Adams. The exercise of a single peremptory challenge that intentionally discriminates on the basis of race violates the Fourteenth Amendment. *Splunge v. Clark*, 960 F.2d 705, 709 (7th Cir. 1992). The determination that there was no purposeful discrimination is unsupported by the record as a whole and is not entitled to a presumption of correctness.

As Coulter points out, the only factual findings that may be accorded deference were those made at the 1991 *Batson* hearing. These findings were discredited by the Seventh Circuit. Every intervening court was a reviewing court. "Deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations." *Miller-El I*, 537 U.S. at 339. The 1998 *Batson* hearing court could not independently evaluate the credibility of the original prosecutors because they did not appear. The trial court could only review transcripts of the *voir dire* and the 1991 *Batson* hearing and hear argument from new counsel.

### C. Appropriate Remedy

The 1998 *Batson* hearing did nothing to supplement the record. The record is barren concerning any third stage *Batson* inquiry: the persuasiveness and credibility of reasons given for the state's strikes. *Miller-El I*, 537 U.S. at 338. The judge presiding over the 1998 hearing did not preside over jury selection, trial, or the 1991 *Batson* hearing. The prosecutors at the 1998 *Batson* hearing did not select the jurors or try the case in 1987. In 1998, the judge was unable to gauge the credibility of the prosecutors because they were not before her. She only heard arguments based on evidence presented years earlier. She was forced to resort to her own

10

independent knowledge of the prosecutors in order to make a credibility determination. *Coulter II*, 748 N.E.3d at 251. She was also forced to speculate about the reasoning behind the prosecution's strikes:

> The court stated that the excusal of Hicks based upon her demeanor was legitimate and race-neutral because it was foreseeable that the prosecution "would want as a juror someone who was strong, stable * * * sure of their convictions and willing to follow them." Regarding Igess, the court stated that although Igess had been asked if his children had different mothers, the prosecution sought to exclude him because he had been unemployed for almost a year and before that "had several jobs * * * each of which only lasted for a few months." The court said that the State might have sought a "more stable, working" person as a juror.

*Coulter II*, 748 N.E.2d at 248. However, this *post facto* explanation is contrary to *Miller-El II*. "If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false. [A court's] substitution of a reason for eliminating [a juror] does nothing to satisfy the prosecutors' burden of stating a racially neutral explanation for their own actions." *Miller-El II*, 125 S. Ct. at 2332.

Any court that now reviews the substance of Coulter's *Batson* violation is not likely to fare better. One of the prosecutors has passed away, and jury selection occurred eighteen years ago. Even if the living prosecutor were available, it is doubtful he would have a meaningful recollection of the relevant events. "[T]he evidence presented to the trial court at the *Batson* hearing [is] subject to . . . imprecision and distortion from the passage of time." *Miller-El I*, 537 U.S. at 339. The only remedy that will allow the state to correct the errors in Coulter's case is a new trial. *Cf. Holloway v. Horn*, 335 F.3d 707, 725-26 (3d Cir. 2004) (seventeen years after conviction and unavailability of relevant witnesses required new trial due to *Batson* violation).

11

Therefore, the petition for *habeas corpus* shall be granted. Execution of the writ is stayed on the condition that the State of Illinois grants Coulter a new trial within a reasonable time, not to exceed 120 days.

ENTER:

Suzanne B. Conlon
United States District Judge

March 3, 2006