IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DWAYNE COULTER | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No.: 93 C 732 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| DEIRDRE BATTAGLIA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Dwayne Coulter was convicted of murder and conspiracy to commit murder by an Illinois jury in 1987. For almost twenty years, he has argued before state and federal courts that the state exercised its peremptory challenges in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). On March 3, 2006, this court granted Coulter's petition for *habeas corpus* for the second time, pending a new trial within 120 days. Memorandum Opinion and Order ("Mem. Op."), Dkt. No. 103 (Mar. 3, 2006). The state moves to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e).

## BACKGROUND

In 1998, the Seventh Circuit affirmed the initial decision to grant Coulter's *habeas* petition because the state trial court did not apply the *Batson* three-step analysis for determining whether constitutionally impermissible discrimination in jury selection was established. *Coulter v. Gilmore*, 155 F. 3d 912, 921 (7th Cir. 1998).[1] *Batson's* third step requires an analysis of the

---

[1] The March 3, 2006 memorandum opinion recounts the appellate history of this case in detail. Mem. Op. at 2-4.

totality of the circumstances for determination whether the state treated similarly situated venirepersons differently based on race. *Id.* The Illinois trial court did not consider the totality of the circumstances at a *Batson* hearing in 1991, and thus did not identify instances where minority and nonminority prospective jurors were treated differently. *Id.* Despite the inadequate record, the Seventh Circuit identified two minority jurors who were arguably treated differently from nonminority counterparts. *Id.* The Seventh Circuit remanded the case, giving the state an opportunity to conduct another *Batson* hearing to consider the totality of the circumstances. *Id.* at 921-22. The state conducted a second *Batson* hearing in 1998.

This court granted Coulter's renewed *habeas* petition on March 3, 2006. *Habeas* relief was grounded on two significant points. First, the post-remand *Batson* hearing in 1998 failed to engage in the analysis required by the Seventh Circuit. Mem. Op. at 7-9. Indeed, the Illinois appellate court acknowledged that the second *Batson* hearing court "did not list and review on the record the reasons [for peremptory strikes] pertaining to each excluded African-American venire member at issue." *People v. Coulter*, 748 N.E.2d 240, 250 (1st Dist. 2001) (*"Coulter II"*). Rather, the 1998 *Batson* remand hearing court stated in conclusory fashion that it took into account the totality of the circumstances when making its ruling. Second, by relying only on the record generated at the original 1991 *Batson* hearing, the 1998 *Batson* hearing was flawed. Mem. Op. at 10-11. The new judge who conducted the 1998 *Batson* hearing reviewed only the cold record recited by prosecutors who also did not participate in jury selection or trial. The essential credibility determination of proffered reasons for the prosecution's peremptory strikes could not be made. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (*"Miller-El I"*); *Coulter v. Gilmore*, 155 F.3d at 920 (citing *Hernandez v. New York*, 500 U.S. 352, 365 (1991)). Nothing

2

has been added to the record other than rehashed, *post facto* speculation about the prosecution's strikes since the Seventh Circuit reviewed the record in 1998. These explanations are insufficient under *Miller-El v. Dretke*, __ U.S. __, 125 S. Ct. 2317, 2332 (2005) ("*Miller-El II*") ("if the [prosecution's] stated reason does not hold up, its pretextual significance does not fade because the trial judge, or an appeals court, can imagine a reason that might not have been shown up as false").

## ANALYSIS

The state moves to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e), alleging that this court committed manifest errors of law and fact in granting Coulter's petition. For the reasons set forth below, the state's motion is granted in part to correct a factual error. However, the state does not establish any manifest error of law or fact that supports denial of *habeas* relief.

The state argues the court misinterpreted the Seventh Circuit's opinion in *Coulter v. Gilmore* by suggesting that the Seventh Circuit required additional evidence on remand. Mem. Op. at 8-9. In finding that the 1991 *Batson* hearing was inadequate, the Seventh Circuit identified two potential minority jurors, Melanie Pinkins and Marcina Adams, who were excluded by the state; these individuals were arguably similarly situated to nonminority jurors who were not challenged. *Coulter v. Gilmore*, 155 F.3d at 921. These two potential jurors were symptomatic of the trial court's failure to reexamine the totality of the circumstances and determine instances in which excluded jurors were similarly situated to unchallenged jurors. *Id.* The *Coulter II* court acknowledged that the 1998 *Batson* hearing court did not consider each prospective juror and engage in a totality of the circumstances analysis on the record. *Coulter II*, 748 N.E.2d 240 at 250. This failure to develop the record is fundamentally inconsistent with the

3

Seventh Circuit's order. The 1998 *Batson* hearing court's factual basis for its findings was essential for compliance with the remand order. This court recognizes conducting a *Batson* hearing more than ten years after jury selection without the original judge and prosecutors was problematic. On remand, the state court was faced with the formidable – perhaps impossible – task of evaluating the credibility of reasons for jury challenges made by prosecutors who were no longer available or involved in the case. The Seventh Circuit determined the 1991 *Batson* hearing was insufficient. Without any development of the original record, or additional information, the 1998 *Batson* hearing fails to satisfy the Seventh Circuit's remand order.

The state points out that this court erred in stating that prospective juror Melanie Pinkins' mother was a nurse, when in fact she was a social worker. *Coulter v. Gilmore*, 155 F.3d at 919 (noting Melanie Pinkins' mother was a social worker). The state's motion to correct this factual error must be granted. However, this factual error does not undermine *habeas* relief. During jury selection, the state explained that it struck Melanie Pinkins because her mother worked at Mercy Hospital, the same hospital where a potential defense witness worked.[2] *Id.* This explanation, like others offered by the state, was facially race-neutral and plausibly legitimate. *Id.* at 920. However, the Seventh Circuit found that prospective juror Melanie Pinkins exemplified the insufficiency of the 1991 *Batson* hearing court's failure to consider the totality of the circumstances: "even though the State struck Pinkins because her mother worked at Mercy Hospital, it did not challenge Larry Saverslak (Caucasian), whose wife was a registered nurse." *Id.* A similarity between the occupations or employers of Melanie Pinkins' mother and Larry

---

[2] The Seventh Circuit noted that the record does not reflect whether Melanie Pinkins' mother and the potential defense witness worked at Mercy Hospital during the same period of time. *Coulter v. Gilmore*, 155 F.3d at 919.

4

Saverslak's wife could indicate that the peremptory challenge used against Melanie Pinkins was racially motivated. But the record was insufficient to make that determination. It was not pivotal to the Seventh Circuit's decision whether Melanie Pinkins' mother worked as a hospital social worker or a nurse.

The state argues this court erred because it found that the *Coulter II* court refused to require the similarly-situated analysis directed by the Seventh Circuit. However, as noted above, the *Coulter II* court expressly recognized that the analysis envisioned by the Seventh Circuit was not conducted on remand. The 1998 *Batson* hearing court's conclusory, unsupported statement that it performed the analysis is not sufficient to comply with the Seventh Circuit's order.

The state argues this court erred in concluding the *Coulter III* court found that *Miller-El I* was inapplicable to this case. Specifically, the state argues that *Coulter III* held the portion of *Miller-El I* concerning Antiterrorism and Effective Death Penalty Act standards was inapplicable, but held that the portion of *Miller-El I* concerning *Batson* did not change the substantive law. Whether the *Coulter III* court found the relevant portion of *Miller-El I* was inapplicable or did not change the substantive law is a matter of semantics. In either case, the *Coulter III* court incorrectly held that *Miller-El I* did not change the analysis or conclusion of *Coulter II*.

The state argues that comity required this court to give deference to the state courts' findings in *Coulter II* and *Coulter III*. However, this argument merely rehashes an argument the state advanced before judgment was entered. Respondent's Answer, Dkt. No. 94 at 8-9. The state cited some of the same authority in its answer to the *habeas* petition, arguing that deference should be afforded the factual findings of the 1998 *Batson* hearing court. *Id.* The state may not

simply repeat earlier arguments in its motion to alter or amend judgment. *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

## CONCLUSION

The writ of *habeas corpus* "indisputably holds an honored position in our jurisprudence," earning itself a place in Article I of the Constitution. *Engle v. Issac*, 456 U.S. 107, 126 (1981). "Today, as in prior centuries, the writ is a bulwark against convictions that violate fundamental fairness." *Id.* Racial discrimination in jury selection is a particularly pernicious harm because it not only violates a criminal defendant's Fourteenth Amendment equal protection rights, *Swain v. Alabama*, 380 U.S. 292, 203-204 (1965), but causes "injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." *McCray v. New York*, 461 U.S. 961, 968 (1983) (Marshall, J., *dissenting from denial of certiorari*) (quoting *Ballard v. United States*, 329 U.S. 187, 195 (1946)). Granting a *habeas* petition is an extreme remedy that imposes costs on the judicial system and on society at large. *Engle*, 456 U.S. at 127-28. However, *habeas* relief must be granted because the state courts failed on remand to address a problem of constitutional import. *Miller-El II*, 125 S. Ct. at 2332; *Miller-El I*, 537 U.S. at 338.

ENTER:

*[signature]*
Suzanne B. Conlon
United States District Judge

April 27, 2006